UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Willie Roberts and Carla Sutton, | No. 1:21-cv-00725-KJM-CDB |
| Plaintiffs, | ORDER |
| v. | |
| County of Kern, et al., | |
| Defendants. | |

In this action, plaintiffs Willie Roberts and Carla Sutton allege Kern County Sheriff's Deputies shot Roberts in the thigh, aimed a rifle at Sutton's head, detained her for several hours in handcuffs, and seized her car and phone during the search of a suspected casino in Bakersfield, California. Roberts and Sutton claim the officers, the County and the Sheriff's Office deprived them of their Fourth Amendment rights and violated California law. The matter is before the court on the defendants' motion for summary judgment, which is fully briefed. *See* Mot., ECF No. 26; Mem., ECF No. 26-1; Opp'n, ECF No. 27; Reply, ECF No. 29. The court has reviewed the record and the parties' briefs and submits the matter on the record before it. *See* E.D. Cal. L.R. 230(g). As explained in this order, genuine disputes of material fact prevent the court from concluding that defendants are entitled to judgment as a matter of law with respect to a majority of plaintiffs' claims. The motion for summary judgment is **granted in part and denied in part**.

1

**I.    EXCESSIVE FORCE**

   **A.    Roberts's Claim against Geherty**

Roberts alleges defendant Brandon Geherty, a Kern County Sheriff's Deputy, used excessive force by shooting him in the upper thigh. As required at this stage, the court views the evidence in the light most favorable to Roberts and draws reasonable inferences in his favor. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Viewed in that light and with the benefit of those favorable inferences, the evidence in this case would show Geherty accidentally shot Roberts in his thigh while Roberts was detained and lying peacefully on the ground at the deputy's feet, under suspicion of no violent crime. *See* Roberts Dep. at 26–27, 48–49, 56–57, 62, ECF No. 27-3. Roberts and Geherty agree the shots were accidental; they differ only in their accounts of what Roberts was doing at the time. *See generally, e.g.*, Geherty Decl., Defs.' Ex. C, ECF No. 26-4. The evidence also shows the Kern County Sheriff's Office instructs its deputies (1) to assume all guns are always loaded, (2) never to let the muzzle of a firearm cover anything they are "not willing to shoot or destroy," (3) to keep their "finger off the trigger and outside the trigger guard until you are going to shoot," and (4) to "[b]e sure of your target and beyond/ surrounding." Pls.' Ex. 9 at 146,[1] ECF No. 27-3.

An accidental or mistaken shooting can be unreasonable and therefore contrary to the Fourth Amendment. *See, e.g., Torres v. City of Madera* (*Torres II*), 648 F.3d 1119, 1124 (9th Cir. 2011); *Torres v. City of Madera* (*Torres I*), 524 F.3d 1053, 1054 (9th Cir. 2008); *Henry v. Purnell*, 501 F.3d 374, 383 (4th Cir. 2007); *Jensen v. City of Oxnard*, 145 F.3d 1078, 1086 (9th Cir. 1998). The question is whether the mistaken use of deadly force was "objectively unreasonable under the totality of the circumstances." *See Torres II*, 648 F.3d at 1124. Those circumstances include, among others, whether the officer had received training to prevent the type of accident in question, whether he acted in accordance with that training, and whether following that training in the moment would have prevented the accident. *Id.* at 1125. It is also relevant

---

[1] Page numbers cited in this exhibit are those applied to the top right of each page by the CM/ECF system.

1    whether the defendant's actions "heightened the officer's sense of danger" or "caused the officer
2    to act with undue haste and inconsistently with [his] training." *Id.* (quoting *Torres I*, 524 F.3d at
3    1057).

4    Here, again, viewing the evidence in the light most favorable to Roberts and drawing
5    inferences in his favor, it would be reasonable to find that Geherty would not have shot Roberts if
6    Geherty had followed the Sheriff's Office's training—not to allow the muzzle of his rifle to cover
7    Roberts, to keep his finger off its trigger and outside its trigger guard, and to be sure of his
8    surroundings. A jury also could reasonably conclude this training was intended to avoid similar
9    accidental shootings. Finally, a jury could find Roberts was doing nothing to heighten Geherty's
10   sense of danger or to force any action in undue haste. As noted above, it would be reasonable to
11   find Roberts was lying peacefully on the ground below Geherty, was not suspected of any violent
12   crime, and was not attempting to flee. An accidental shooting in these circumstances would be
13   objectively unreasonable.

14   The relevant law was clearly established at the time. The Ninth Circuit had held for many
15   years that officers are not entitled to qualified immunity when they use deadly force by making
16   unreasonable mistakes in circumstances such as this. *See Torres II*, 648 F.3d at 1128–29
17   (reversing district court's order granting qualified immunity because relevant law was "clearly
18   established"). This court is bound by that holding. "While a jury might ultimately find [Deputy
19   Geherty's] mistake . . . to have been reasonable," it would be "inappropriate for [this] court to
20   reach this conclusion in the face of material disputes of fact." *Id.* at 1129. Geherty is therefore
21   not entitled to qualified immunity. The court **denies** his motion for summary judgment of this
22   claim.

23   **B.    Sutton's Claim Against Brock**

24   Sutton was in her car near the scene of the search, near where Roberts was shot. When
25   the evidence is viewed in the light most favorable to Sutton's case, it would show defendant Ryan
26   Brock, also a Kern County Sheriff's Deputy, opened her car's passenger door, jumped into the
27   passenger seat beside her and aimed a rifle at her head, its muzzle only a few inches from her
28   face. *See* Sutton Dep. at 30–34, ECF No. 27-3. A jury could reasonably find on this record that

3

1   Brock did not suspect her of having committed a violent or dangerous crime and she was not
2   attempting to flee, resisting or otherwise disobeying or disregarding any instructions.
3         It was clearly established at the time that an officer may not aim a deadly weapon at a
4   person who is not suspected of a violent crime, not resisting, not disobeying instructions and not
5   attempting to flee. *See, e.g.*, *Thompson v. Rahr*, 885 F.3d 582, 586–87 (9th Cir. 2018); *Espinosa*
6   *v. City & County of San Francisco*, 598 F.3d 528, 537–38 (9th Cir. 2010); *Hopkins v. Bonvicino*,
7   573 F.3d 752, 776–77 (9th Cir. 2009); *Tekle v. United States*, 511 F.3d 839, 846 (9th Cir. 2007);
8   *Robinson v. Solano County*, 278 F.3d 1007, 1015–16 (9th Cir. 2002) (en banc).  The court **denies**
9   Brock's motion for summary judgment of this claim.

10        **C.**     **Claims Against the Supervising Sergeant and Sheriff**
11        Roberts and Sutton argue Sergeant Jason Colbert, who supervised the other deputies on
12  the scene, is liable because he "directly participated in the raid," organized it in a way to
13  encourage excessive force, did not prevent his subordinates from using excessive force, and did
14  not ensure his subordinates were adequately trained. Opp'n at 13–14 (alterations omitted)
15  (quoting *Cameron v. Craig*, 713 F.3d 1012, 1021 (9th Cir. 2013)).  Although supervisors are not
16  generally liable for their subordinates' actions in cases of allegedly excessive force, they can be
17  liable if they were either directly involved or if there is "a sufficient causal connection between
18  the supervisor's wrongful conduct and the constitutional violation." *Rodriguez v. County of Los*
19  *Angeles*, 891 F.3d 776, 798 (9th Cir. 2018) (quoting *Keates v. Koile*, 883 F.3d 1228, 1242–43
20  (9th Cir. 2018)).
21        There is no dispute that Colbert was present at the search, participated in it, and gave
22  instructions to the other deputies. As was true in *Cameron*, cited above, the "record on the
23  excessive force claim" against Colbert in this case "is not fully developed." 713 F.3d at 1021.
24  For that reason, the court cannot determine as a matter of law that Colbert was uninvolved in the
25  deputies' uses of force against Sutton or that his instructions or decisions did not cause the
26  deputies to use excessive force. The court **denies** the motion as to the excessive force claim
27  against Colbert.

1    Roberts and Sutton argue similarly that the Kern County Sheriff himself is liable for the
2 deputies' use of excessive force. *See* Opp'n at 16–17. They have not pointed to evidence they
3 could introduce at trial to prove the Sheriff played any role in the search or the force the deputies
4 used against Roberts and Sutton. The court **grants in part** the motion for summary judgment as
5 to the claim of excessive force against defendant Youngblood.

6    **D.    Claims Against the County and Sheriff's Department**

7    Municipal governments are not automatically liable under § 1983 for the unconstitutional
8 actions of their employees, but rather only for those governments' own actions, policies and
9 practices. *See Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 690–91 (1978).
10 Roberts and Sutton argue Kern County had an informal policy to encourage deputies to use
11 excessive force in similar searches and seizures. *See* Opp'n at 14–15. They cite a variety of
12 evidence that could support this claim, including government reports of excessive force,
13 numerous past settlements for claims of excessive force against county officers, the absence of
14 discipline against officers for using excessive force, and the absence of any changes in policy
15 following uses of excessive force. *See id.* The County argues briefly that these other incidents
16 were not similar; it also argues the cited reports are inadmissible, and it contends without citation
17 it was impossible to change its policies. *See* Reply at 9–10. The court cannot conclude on this
18 record that the evidence cited in plaintiffs' opposition cannot be reduced to an admissible form at
19 trial. *See, e.g., Fraser v. Goodale*, 342 F.3d 1032, 1036–37 (9th Cir. 2003) (considering
20 inadmissible evidence at summary judgment because it "could be presented in an admissible form
21 at trial"). Nor can the court conclude as a matter of law that this evidence would fall short of
22 showing the County had an informal policy to encourage excessive force during searches and
23 seizures. The court **denies** the County's motion for summary judgment.

24    Defendants also argue plaintiffs cannot pursue similar claims against the Sheriff's Office,
25 both because (1) the Sheriff's Office is not a "person" subject to suit under § 1983 and (2) a claim
26 against the Sheriff's Office would be duplicative of the claim against the county itself. *See* Mem.
27 at 7. As plaintiffs correctly point out in opposition, federal courts have held that plaintiffs can
28 pursue claims against California sheriff's offices and the surrounding counties. *See* Opp'n at 9;

5

*see also, e.g.*, *Est. of Osuna v. County of Stanislaus*, 392 F. Supp. 3d 1162, 1170–71 (E.D. Cal. 2019) (collecting authority and summarizing relevant decisions).  Defendants do not disagree in reply.

It is true, however, that permitting claims against both a county and that county's sheriff's department might lead to confusion or duplicative litigation.  Defendants do not explain, however, why the continued presence of both the County and Sheriff's Office would lead to confusion or duplicative efforts in this case.  The court is satisfied at this stage that it can avoid any confusion or wasteful litigation at trial through the issuance of carefully worded pretrial orders, jury instructions, verdict forms and similar tools.  *See, e.g.*, *Cantu v. Kings County*, No. 20-00538, 2021 WL 859428, at *11 (E.D. Cal. Mar. 8, 2021) (reasoning similarly).  The court **denies** the Sheriff's Office's motion for summary judgment of this claim, without prejudice to renewal at trial.

## II.  WRONGFUL DETENTION OR ARREST

Sutton alleges three deputies—Ryan Brock, William Malloy and Cody Johnson—unlawfully detained or arrested her outside the suspected casino in violation of the Fourth Amendment.  Brock detained Sutton and removed her from her car, and Malloy and Johnson detained her for multiple hours while they investigated and asked questions.  *See* Brock Decl. ¶ 11, ECF No. 26-4; Johnson Decl. ¶¶ 5–15, ECF No. 26-4; Malloy Decl. ¶ 5, ECF No. 26-4.

In the face of this claim, Brock has shown he is entitled to qualified immunity as a matter of law.  He would testify at trial that he believed, albeit perhaps incorrectly, that Sutton was attempting to warn people inside the suspected casino that several deputies had arrived.  *See* Brock Decl. ¶ 9.  Sutton does not dispute Brock's claims about his beliefs; she argues Brock was wrong to detain her because she was not inside the suspected casino.  *See* Opp'n at 17–18. Because it is undisputed that Brock was relying on the potentially mistaken belief that Sutton was trying to warn people officers were coming, it was not clear at the time that detaining her in an effort to prevent further warnings would deprive her of her Fourth Amendment rights.  *See Pearson v. Callahan*, 555 U.S. 223, 231 (2009) ("The protection of qualified immunity applies regardless of whether the government official's error is 'a mistake of law, a mistake of fact, or a

6

mistake based on mixed questions of law and fact.'" (quoting *Groh v. Ramirez*, 540 U.S. 551, 567 (2004) (Kennedy, J., dissenting))). The Supreme Court has held that officers may detain people within the "immediate vicinity of a premises to be searched" based on their "interests in executing a safe and efficient search." *Bailey v. United States*, 568 U.S. 186, 201 (2013).

Malloy and Johnson, by contrast, have not demonstrated they are entitled to judgment as a matter of law. A jury could reasonably find at trial that they kept Sutton at the scene of the search in handcuffs for hours, long after any suspicion about her potential involvement or connections to the casino would have dissipated. When the evidence is viewed in the light most favorable to her claims and reasonable inferences are drawn in her favor, as required, a reasonable officer in Malloy's and Johnson's position would have known that prolonging her detention for several hours to allow an investigatory interview would deprive her of her Fourth Amendment rights, and they would not be entitled to qualified immunity. *See, e.g.*, *Perez Cruz v. Barr*, 926 F.3d 1128, 1143–44 (9th Cir. 2019) (holding detention incident to pre-planned search violated Fourth Amendment if based on investigatory purposes disconnected from purposes of search); *Nicholson v. City of Los Angeles*, 935 F.3d 685, 691 (9th Cir. 2019) ("It is well-established that a 'person may not be arrested, or must be released from arrest, if previously established probable cause has dissipated.'" (quoting *United States v. Ortiz-Hernandez*, 427 F.3d 567, 574 (9th Cir. 2005) (per curiam)).

The court **grants in part** the motion for summary judgment of Sutton's false arrest claim as to defendant Brock and **denies in part** the motion as to the same claim against defendants Malloy and Johnson.

III. **UNREASONABLE SEARCH AND SEIZURE**

Sutton also alleges deputies Malloy and Johnson seized her belongings—her car, purse and phone—at the scene of the search without a warrant and without probable cause in violation of the Fourth Amendment. Malloy and Johnson do not contend the warrant to search the casino entitled them to seize Sutton's belongings. They rely instead on the exception for warrantless searches in "exigent circumstances." *See* Mem. at 20–21 (quoting *Illinois v. McArthur*, 531 U.S. 326, 331 (2001)). Under that exception, a temporary warrantless seizure can be constitutional in

the face of a "specially pressing or urgent law enforcement need," such as the need to avoid "grave danger" or "loss of evidence." *McArthur*, 531 U.S. at 331 (citations omitted). The court must "balance the privacy-related and law enforcement-related concerns to determine if the intrusion was reasonable." *Id.*

Malloy and Johnson argue it was necessary to seize the car and purse because they were within "the crime scene tape." Opp'n at 21. They do not explain, however, why it was necessary or even helpful to keep Sutton from her car and purse for several hours overnight, even after they came to suspect her of no crime. And contrary to their position, "there is no 'crime scene exception' to the Fourth Amendment." *United States v. Song Ja Cha*, 597 F.3d 995, 1002 n.6 (9th Cir. 2010).

As for the phone, the deputies argue (1) they "had reason to believe the phone could contain information useful to law enforcement investigating the officer involving shooting" and (2) they feared "Sutton may delete incriminating evidence against Willie Roberts from her phone if it was returned to her before a warrant was obtained to seize the phone and download its contents." Mem. at 22. But the deputies do not explain what they expected to find on the phone. Nor do they offer any evidence to show it was reasonable to believe Sutton would delete anything. Their argument amounts to speculation. A jury could conclude on this record that Sutton was effectively a bystander without any incentive to destroy anything.

The deputies correctly point out that Sutton signed a consent form authorizing them to search her phone. *See* Mem. at 22. A jury could find, however, that the deputies threatened to keep her car and leave her stranded unless she gave them consent to search her phone. *See* Sutton Dep. at 46. This evidence could allow a jury to find she did not give voluntary consent. *See, e.g.*, *Liberal v. Estrada*, 632 F.3d 1064, 1083–84 (9th Cir. 2011) (holding consent was not voluntary in similar circumstances), *abrogated in part on other grounds by Hampton v. California*, 83 F.4th 754 (9th Cir. 2023). The court **denies** the motion for summary judgment of this claim.

IV.    **CALIFORNIA CONSTITUTIONAL CLAIMS**

Roberts and Sutton also assert claims for excessive force, false arrest and unreasonable search and seizure under the California Constitution. Defendants move for summary judgment of

8

these claims based on their argument that the state constitution does not create a private right of action. *See* Mem. at 23. The California Supreme Court has held that the provisions of the state constitution are "mandatory and prohibitory"; that "all branches of government are required to comply with constitutional directives"; and that "every constitutional provision is self-executing to this extent, that everything done in violation of it is void." *Katzberg v. Regents of Univ. of Cal.*, 29 Cal. 4th 300, 306–07 (2002) (citations, alterations and quotation marks omitted). Although monetary damages may not be available for violations of every constitutional provision, a private plaintiff may seek declaratory relief or injunctive relief against a "proper defendant." *Id.* at 307. Roberts and Sutton seek injunctive and declaratory relief. Defendants have not demonstrated they cannot do so under state law. The court **denies** the motion for summary judgment of the California constitutional claims.

## V.     OTHER STATE LAW CLAIMS

Finally, defendants seek summary judgment of Roberts's and Sutton's negligence claims and their claims under the Tom Bane Civil Rights Act. Mem. at 23–24. Defendants do not tie their arguments about these claims to any particular legal theories or evidence. Their arguments also are almost entirely derivative of the points they make in other portions of their motion. For these reasons, they have not carried their initial burden of production, and their motion must be denied with respect to these claims. *See Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102–03 (9th Cir. 2000) ("If a moving party fails to carry its initial burden of production, the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial."). That said, as summarized above, Roberts and Sutton have not cited evidence that could show the Sheriff played any role in the disputed uses of force. The court therefore **grants in part** the motion as to the remaining state law claims against defendant Youngblood; the court otherwise **denies** the motion as to the remaining state law claims.

## VI. CONCLUSION

For the reasons above, the motion for summary judgment is (1) **granted in part** as to the claims of excessive force and under the Bane Act against defendant Youngblood, (2) **granted in part** as to the false arrest claim against defendant Brock, and (3) otherwise **denied**.

A final pretrial conference is **set for April 17, 2025 at 10:00 a.m.** in Courtroom Three at 501 I Street, Sacramento, California, 95814.  The parties shall meet and confer and file a joint pretrial statement no less than 14 days prior to the final pretrial conference.  The provisions of Local Rule 281 shall apply with respect to the matters to be included in the joint pretrial statement.  At least one of the attorneys who will conduct the trial for each of the parties shall attend the final pretrial conference.  All motions in limine must be filed in conjunction with the joint pretrial statement.  In most cases, motions in limine are addressed and resolved on the morning of the first day of trial.  The parties may alert the court at the final pretrial conference and in their final joint pretrial statement that a particular motion or motions should be resolved earlier.  At the final pretrial conference, the court will set a briefing and hearing schedule on the motions in limine as necessary.  The parties are reminded that a motion in limine is a pretrial procedural device designed to address the admissibility of evidence.  The court looks with disfavor upon dispositional motions presented at the final pretrial conference or at trial in the guise of motions in limine.

IT IS SO ORDERED.

DATED: March 4, 2025.

SENIOR UNITED STATES DISTRICT JUDGE