Mark E. Merin (State Bar No. 043849)
Paul H. Masuhara (State Bar No. 289805)
LAW OFFICE OF MARK E. MERIN
1010 F Street, Suite 300
Sacramento, California 95814
Telephone: (916) 443-6911
Facsimile: (916) 447-8336
E-Mail: mark@markmerin.com
paul@markmerin.com

Attorneys for Plaintiffs
WILLIE ROBERTS and CARLA SUTTON

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| WILLIE ROBERTS and CARLA SUTTON,<br><br>Plaintiffs,<br><br>vs.<br><br>COUNTY OF KERN, KERN COUNTY SHERIFF'S OFFICE, JASON COLBERT, WILLIAM MALLOY, CODY JOHNSON, BRANDON GEHERTY, and RYAN BROCK,<br><br>Defendants. | Case No. 1:21-cv-00725-KJM-CDB<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR LEAVE TO AMEND SCHEDULING ORDER**<br><br>Date: July 10, 2025[1]<br>Time: 10:00 a.m.<br>Location: Robert T. Matsui U.S. Courthouse, 501 I Street, Sacramento, CA 95814<br>Courtroom: 3 (15th Floor)<br>District Judge: Hon. Kimberly J. Mueller |

[1] Defendants' counsel unilaterally selected and scheduled a hearing date of July 10, 2025, without consulting Plaintiffs' counsels' availability. Immediately after this motion was filed, Plaintiffs' counsel informed Defendants' counsel that they were not available for a hearing on July 10, 2025. In response, Defendants' counsel refused to change the hearing date because alternative dates were purportedly "too late" and "do not work for us." Declaration of Mark E. Merin, Exhibit A.

# TABLE OF CONTENTS


I. INTRODUCTION ..... 1
II. STATEMENT OF RELEVANT FACTS & PROCEEDINGS ..... 1
III. ARGUMENT ..... 2
A. MOTION FOR LEAVE TO FILE AN AMENDED ANSWER ..... 2
1. Excusable Neglect ..... 3
a. Prejudice ..... 3
b. Delay ..... 4
c. Reason ..... 5
d. Good Faith ..... 6
2. Good Cause ..... 6
a. Workable Schedule ..... 7
b. Unforeseen Circumstances ..... 8
c. Diligence ..... 9
3. *Foman* Factors ..... 11
a. Bad Faith ..... 11
b. Undue Delay ..... 11
c. Prejudice ..... 12
d. Futility ..... 13
i. Waiver ..... 13
ii. Forfeiture ..... 14
iii. Proof ..... 14
e. Prior Amendment ..... 17
B. MOTION FOR LEAVE TO FILE A SECOND MOTION FOR SUMMARY JUDGMENT ..... 17
1. Reconsideration ..... 17
2. Excusable Neglect ..... 18
3. Good Cause ..... 18
C. ANTICIPATED MOTION FOR JUDGMENT AS A MATTER OF LAW ..... 19

IV. CONCLUSION ........................................ 19

# TABLE OF AUTHORITIES

## CASES

*389 Orange St. Partners v. Arnold*, 179 F.3d 656 (9th Cir. 1999) ....... 18
*Acri v. Int'l Asso. of Machinists & Aerospace Workers*, 781 F.2d 1393 (9th Cir. 1986) ....... 11, 12
*African Am. Voting Rights Legal Def. Fund v. Villa*, 54 F.3d 1345 (8th Cir. 1995) ....... 5
*Allen v. City of Beverly Hills*, 911 F.2d 367 (9th Cir. 1990) ....... 11, 17
*AmerisourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946 (9th Cir. 2006) ....... 10, 11
*Anoruo v. Valley Health Sys., LLC*, 2018 U.S. Dist. LEXIS 151645 (D. Nev. Sep. 6, 2018) ....... 18
*B2B CFO Partners, LLC v. Kaufman*, 2011 U.S. Dist. LEXIS 76204 (D. Ariz. July 13, 2011) ....... 10
*Bates v. Schwarzenegger*, 2019 U.S. Dist. LEXIS 247437 (E.D. Cal. Sep. 18, 2019) ....... 3
*Binkovich v. Barthelemy*, 672 F. App'x 648 (9th Cir. 2016) ....... 19
*Borges v. County of Humboldt*, 2017 U.S. Dist. LEXIS 169170 (N.D. Cal. Oct. 12, 2017) ....... 4, 13
*Branch Banking & Tr. Co. v. DMSI, LLC*, 871 F.3d 751 (9th Cir. 2017) ....... 3
*Brazill v. Cal. Northstate Coll. of Pharmacy*, 2013 U.S. Dist. LEXIS 119691 (E.D. Cal. Aug. 22, 2013) . 6
*Buenviaje v. Wal-Mart Assocs.*, 2024 U.S. Dist. LEXIS 195657 (S.D. Cal. Oct. 25, 2024) ....... 2, 5, 6
*Carbajal v. Dorn*, 2010 U.S. Dist. LEXIS 46446 (D. Ariz. Apr. 13, 2010) ....... 10
*Cervantes v. Zimmerman*, 2019 U.S. Dist. LEXIS 39789 (S.D. Cal. Mar. 12, 2019) ....... 10
*Coleman v. Quaker Oats Co.*, 232 F.3d 1271 (9th Cir. 2000) ....... 9, 12
*Cranpark, Inc. v. Rogers Grp., Inc.*, 821 F.3d 723 (6th Cir. 2016) ....... 19
*DRK Photo v. McGraw-Hill Glob. Educ. Holdings, LLC*, 870 F.3d 978 (9th Cir. 2017) ....... 6
*Eckert Cold Storage v. Behl*, 943 F. Supp. 1230 (E.D. Cal. 1996) ....... 10
*Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048 (9th Cir. 2003) ....... 12
*Estate of Thomas v. County of Sacramento*, 2022 U.S. Dist. LEXIS 10175 (E.D. Cal. Jan. 18, 2022) ....... 10
*Foman v. Davis*, 371 U.S. 178 (1962) ....... 11
*Garza v. City of Visalia*, 2022 U.S. Dist. LEXIS 230912 (E.D. Cal. Dec. 22, 2022) ....... 9
*Gates v. Sergent*, 2024 U.S. Dist. LEXIS 77030 (E.D. Cal. Apr. 26, 2024) ....... 8, 9
*Gomez v. Fachko*, 2021 U.S. Dist. LEXIS 83476 (N.D. Cal. Apr. 30, 2021) ....... 16
*Hamer v. Neighborhood Hous. Servs.*, 583 U.S. 17 (2017) ....... 14

*Harman Int'l Indus. Inc. v. Jem Access., Inc.*, 2023 U.S. Dist. LEXIS 90410 (C.D. Cal. Apr. 27, 2023) . 10

*Hebrard v. Nofziger*, 90 F.4th 1000 (9th Cir. 2024) ........ 13, 14, 19

*Ho v. Nazaryan*, 2024 U.S. Dist. LEXIS 240168 (C.D. Cal. Dec. 13, 2024) ........ 2

*Hughes v. Wal-Mart Assocs.*, 2024 U.S. Dist. LEXIS 167531 (E.D. Cal. Sep. 17, 2024) ........ 6

*Hukman v. Sinclair*, 2024 U.S. Dist. LEXIS 200713 (D. Nev. Nov. 5, 2024) ........ 18

*In re Veritas Software Corp. Sec. Litig.*, 2006 U.S. Dist. LEXIS 10116 (N.D. Cal. Feb. 24, 2006) ........ 5

*Int'l Meat Traders, Inc. v. H & M Food Sys.*, 70 F.3d 836 (5th Cir. 1995) ........ 19

*Jackson v. Laureate, Inc.*, 186 F.R.D. 605 (E.D. Cal. 1999) ........ 7, 8, 9

*John R. Sand & Gravel Co. v. United States*, 552 U.S. 130 (2008) ........ 14

*Johnson v. Mammoth Recreations Inc.*, 975 F.2d 604 (9th Cir. 1992) ........ 6, 7, 11

*Kangarlou v. Locklear*, 2023 U.S. Dist. LEXIS 241581 (D. Nev. Oct. 26, 2023) ........ 2

*Karoun Dairies, Inc. v. Karlacti, Inc.*, 2014 U.S. Dist. LEXIS 92723 (S.D. Cal. July 8, 2014) ........ 4, 13

*Kaufman v. Unum Life Ins. Co. of Am.*, 834 F. Supp. 2d 1186 (D. Nev. 2011) ........ 4, 13

*Lai v. Quality Loan Serv. Corp.*, 2010 U.S. Dist. LEXIS 61120 (C.D. Cal. June 2, 2010) ........ 17

*Lampley v. Smith's Food & Drug Ctrs., Inc.*, 2016 U.S. Dist. LEXIS 128060 (D. Nev. July 19, 2016) ... 10

*Lemos v. County of Sonoma*, 40 F.4th 1002 (9th Cir. 2022) ........ 15

*Level 3 Communs. v. Lidco Imperial Valley*, 2012 U.S. Dist. LEXIS 146887 (S.D. Cal. Oct. 11, 2012) .... 5

*Lewis v. Dirt Sports LLC*, 2015 U.S. Dist. LEXIS 192852 (D. Ariz. June 30, 2015) ........ 17

*Lewis v. Russell*, 2012 U.S. Dist. LEXIS 143453 (E.D. Cal. Oct. 2, 2012) ........ 10

*Long v. Ford Motor Co.*, 2009 U.S. Dist. LEXIS 32306 (D. Ariz. Apr. 1, 2009) ........ 10

*Lund v. State of California*, No. 20-17133, 2021 U.S. App. LEXIS 32096 (9th Cir. Oct. 26, 2021) ........ 15

*Manriquez v. City of Phoenix*, 654 Fed. App'x 350 (9th Cir. 2016) ........ 10

*Martell v. Cole*, 115 F.4th 1233 (9th Cir. 2024) ........ 4, 15

*McElroy v. Cox*, 2009 U.S. Dist. LEXIS 122179 (E.D. Cal. Dec. 8, 2009) ........ 17

*Medeiros v. Clark*, 713 F. Supp. 2d 1043 (E.D. Cal. 2010) ........ 15

*Newell v. County of San Diego*, 2013 U.S. Dist. LEXIS 148329 (S.D. Cal. Oct. 15, 2013) ........ 2

*Nunes v. Ashcroft*, 375 F.3d 805 (9th Cir. 2003) ........ 13

*Nuno v. County of San Bernardino*, 58 F. Supp. 2d 1127 (C.D. Cal. 1999) ........ 15

*Pac. Coast Steel v. Stoddard*, 2013 U.S. Dist. LEXIS 199213 (S.D. Cal. Feb. 15, 2013) ........................17

*Peyton v. Burdick*, 358 Fed. App'x 961 (9th Cir. 2009)................................................................8

*Pincay v. Andrews*, 389 F.3d 853 (9th Cir. 2004)........................................................................3

*Powell v. Wells Fargo Home Mortg.*, 855 F. App'x 382 (9th Cir. 2021) ......................................2

*Reese v. County of Sacramento*, 888 F.3d 1030 (9th Cir. 2018)...........................................4, 15

*Rigsbee v. City & County of Honolulu*, 2019 U.S. Dist. LEXIS 32475 (D. Haw. Feb. 28, 2019) .........3, 13

*Ruvalcaba v. Ocwen Loan Servicing, LLC*, 2018 U.S. Dist. LEXIS 1745 (S.D. Cal. Jan. 4, 2018) ..........10

*Slaughter v. S. Talc Co.*, 919 F.2d 304 (5th Cir. 1990) ................................................................5

*Tapia v. Naphcare Inc.*, 2025 U.S. Dist. LEXIS 47189 (W.D. Wash. Mar. 14, 2025) ...............3, 9, 11, 12

*Taylor v. First Advantage Background Servs. Corp.*, 207 F. Supp. 3d 1095 (N.D. Cal. 2016) ............3, 13

*TB Holding Co. v. J&S Siding*, 2024 U.S. Dist. LEXIS 63359 (D. Idaho Apr. 5, 2024) ..................3, 4, 12

*Texaco, Inc. v. Ponsoldt*, 939 F.2d 794 (9th Cir. 1991)...............................................................12

*Toutov v. Curative Labs Inc.*, 2023 U.S. Dist. LEXIS 158876 (C.D. Cal. Aug. 28, 2023).......................14

*Trs. of the Nev. Resort Ass'n v. Grasswood Partners*, 2013 U.S. Dist. LEXIS 43333 (D. Nev. Mar. 27, 2013) . 14

*United States v. McClellon*, 2025 U.S. Dist. LEXIS 54157 (W.D. Wash. Mar. 24, 2025) .......................17

*Venters v. City of Delphi*, 123 F.3d 956 (7th Cir. 1997)...........................................................4, 12

*Vill. Cmtys., LLC v. County of San Diego*, 2023 U.S. Dist. LEXIS 5509 (S.D. Cal. Jan. 11, 2023)..........18

*Wallace v. Kato*, 549 U.S. 384 (2007) ......................................................................................8, 9

*Washington v. Los Angeles County Sheriff's Dep't*, 833 F.3d 1048 (9th Cir. 2016)...........................13, 15

*Wizards of the Coast LLC v. Cryptozoic Entm't LLC*, 309 F.R.D. 645 (W.D. Wash. 2015) ....................11

*Yeoman v. Ikea U.S. W., Inc.*, 2013 U.S. Dist. LEXIS 151763 (S.D. Cal. Oct. 22, 2013) ..........................5

*Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080 (9th Cir. 2002)........................................................7

STATUTES

Cal. Pen. Code § 69(a) .....................................................................................................16

RULES

E.D. Cal. L.R. 230(j).........................................................................................................18

Fed. R. Civ. P. 16(b)(4).........................................................................................................2

Fed. R. Civ. P. 6(b)(1)(B) .....................................................................................................2

## I. INTRODUCTION

Plaintiffs oppose Defendants' motion for leave to amend the scheduling order, ECF No. 66.

## II. STATEMENT OF RELEVANT FACTS & PROCEEDINGS

Generally, this action arises from incidents occurring on December 15, 2020, including the officer-involved shooting of Willie Roberts and the arrest of Carla Sutton and seizure of her property.

On December 18, 2020, Willie Roberts was charged with violations of California Penal Code § 417.8 (brandishing firearm or deadly weapon to avoid arrest) and California Penal Code § 69 (obstructing/resisting an executive officer), in *People v. Willie Roberts*, Kern County Superior Court, Case No. BF183545A. Defendants' Request for Judicial Notice, ECF No. 52 ("RJN") at 6–8.

On May 5, 2021, Willie Roberts and Carla Sutton (collectively, "Plaintiffs") initiated this action by filing the currently-operative Complaint. ECF No. 1.

On June 21, 2021, the County of Kern ("County"), Kern County Sheriff's Office ("KCSO"), Donny Youngblood, Jason Colbert, William Malloy, Cody Johnson, Brandon Geherty, Ryan Brock (collectively "Defendants") filed the currently-operative First Amended Answer. ECF No. 14.

On July 14, 2021, the parties filed a Joint Scheduling Report, wherein the parties identified "*People v. Willie Roberts*, Kern County Superior Court, Case No. BF183545A" under the section "Related Cases." ECF No. 17 at 7.

On July 20, 2021, the Court issued a scheduling order wherein the "Pleading Amendment Deadline" was set for November 1, 2021, and the "Pre-Trial Motion Schedule" set the "dispositive pre-trial motions" deadline for January 11, 2023. ECF No. 18 at 2–4.

On January 12, 2023, Defendants filed a motion for summary judgment. ECF No. 26.

On January 24, 2023, Plaintiffs filed an opposition. ECF No. 27.

On June 7, 2024, Willie Roberts pled *nolo contendere* to the charge under California Penal Code § 69, and the charge under California Penal Code § 417.8 was dismissed. RJN at 21–24. Defendants were aware of the Roberts' plea but made a "reasoned decision to delay" moving to amend. ECF No. 66 at 6.

On March 5, 2025, the Court filed an order denying summary judgment "with respect to a majority of [P]laintiffs' claims," and set a final pretrial conference on April 17, 2025. ECF No. 41.

On April 14, 2025, Defendants filed a motion for reconsideration from the Court's order denying

in part Defendants' motion for summary judgment, ECF No. 48, and, "as an alternative," a motion for "leave of court to file a second motion for summary judgment," ECF No. 49 at 22–23.

On April 22, 2025, the Court filed a final pretrial order setting trial to begin on August 4, 2025. ECF No. 57 at 10.

On May 5, 2025, the Court filed an order denying Defendants' motion for reconsideration and "request permission to file a second motion for summary judgment." ECF No. 61.

On May 29, 2025, Defendant filed the instant motion for leave to amend scheduling order. ECF No. 66 ("Motion").

## III. ARGUMENT

"A schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). "When an act may or must be done within a specified time, the court may, for good cause, extend the time … on motion made after the time has expired if the party failed to act because of excusable neglect." Fed. R. Civ. P. 6(b)(1)(B).

"Thus, when the scheduling order deadline has passed, the moving party must establish both good cause *and* excusable neglect." *See*, *e.g.*, *Buenviaje v. Wal-Mart Assocs.*, 2024 U.S. Dist. LEXIS 195657, at *9 (S.D. Cal. Oct. 25, 2024); *Ho v. Nazaryan*, 2024 U.S. Dist. LEXIS 240168, at *2 (C.D. Cal. Dec. 13, 2024) ("For lapsed deadlines, relief from the case schedule requires both good cause and excusable neglect."); *Newell v. County of San Diego*, 2013 U.S. Dist. LEXIS 148329, at *7 (S.D. Cal. Oct. 15, 2013) ("[T]he party must demonstrate both good cause for modifying the scheduling order, in addition to demonstrating excusable neglect for having missed the deadline.").

### A. MOTION FOR LEAVE TO FILE AN AMENDED ANSWER

Defendants fail to address the excusable-neglect standard and only discuss the good-cause standard. *See* Motion at 4. On this basis alone, the Court may deny Defendants' motion. *See*, *e.g.*, *Powell v. Wells Fargo Home Mortg.*, 855 F. App'x 382, 384 (9th Cir. 2021) ("[Movant]'s excusable neglect argument is waived because he failed to raise it adequately in district court, and the district court did not abuse its discretion in declining to address it."); *but see Kangarlou v. Locklear*, 2023 U.S. Dist. LEXIS 241581, at *7 n.5 (D. Nev. Oct. 26, 2023) ("Since good cause is lacking, [movant]'s motion cannot prevail even without addressing the additional showing of excusable neglect that is required.").

**1. Excusable Neglect**

Whether a litigant has established excusable neglect under Rule 6(b)(1)(B) requires balancing: "(1) the danger of prejudice to the non-moving party, (2) the length of delay and its potential impact on judicial proceedings, (3) the reason for the delay, including whether it was within the reasonable control of the movant, and (4) whether the moving party's conduct was in good faith." *Pincay v. Andrews*, 389 F.3d 853, 855 (9th Cir. 2004) (recognizing the "four-part balancing test" applies in "various contexts … in the federal rules of procedure"). "The burden to present facts to demonstrate excusable neglect is on the movant." *Bates v. Schwarzenegger*, 2019 U.S. Dist. LEXIS 247437, at *14 (E.D. Cal. Sep. 18, 2019); *see also Branch Banking & Tr. Co. v. DMSI, LLC*, 871 F.3d 751, 765 (9th Cir. 2017).

***a. Prejudice***

Defendants argue that "Roberts would not be prejudiced by adding the [*Heck*] affirmative defense" because the "facts [giving rise to his criminal proceedings were] known to him … *since the day of the incident*." Motion at 10. But Roberts' general knowledge of factual circumstances of his shooting is not the same as knowledge of affirmative defenses to be raised by Defendants in a lawsuit. *See TB Holding Co. Ltd. Liab. Co. v. J&S Siding*, 2024 U.S. Dist. LEXIS 63359, at *11 (D. Idaho Apr. 5, 2024) (raising untimely affirmative defenses meant that plaintiff did not "kn[o]w which affirmative defenses [defendant] would claim"). Thus, "[t]he failure to raise a defense is prejudicial if the party against whom the issue is raised may have tried its case differently or advanced distinct legal arguments against the issue." *Id.*, at *10 (citation omitted); *Taylor v. First Advantage Background Servs. Corp.*, 207 F. Supp. 3d 1095, 1106 (N.D. Cal. 2016) ("Plaintiff would be prejudiced if Defendant were allowed to raise the affirmative defense for the first time at summary judgment and after the close of discovery.").

In this case, the parties are weeks away from trial scheduled to begin on August 4, 2025. ECF No. 57 at 10. Accordingly, "Plaintiff[s] ha[ve] already expended significant time and resources structuring [their] trial preparation" and, "had [Defendants] asserted the [*Heck*] defense earlier, [Plaintiffs'] litigation strategy … may have been impacted. These prejudicial consequences [] support denying [Defendants'] motion to amend." *Tapia v. Naphcare Inc.*, 2025 U.S. Dist. LEXIS 47189, at *8–9 (W.D. Wash. Mar. 14, 2025) (internal citation omitted); *see*, *e.g.*, *Rigsbee v. City & County of Honolulu*, 2019 U.S. Dist. LEXIS 32475, at *7 (D. Haw. Feb. 28, 2019) (finding "[d]efendant's [m]otion [wa]s untimely, would unduly

delay trial, and severely prejudice the [p]laintiff," where "[d]efendant s[ought] to raise an affirmative defense" "for the first time" only "five weeks before trial"); *Borges v. County of Humboldt*, 2017 U.S. Dist. LEXIS 169170, at *5 (N.D. Cal. Oct. 12, 2017) (that "plaintiff may have … pursued a different litigation strategy" was a "prejudicial consequence[] due to defendants' failure to plead the defense" earlier); *Karoun Dairies, Inc. v. Karlacti, Inc.*, 2014 U.S. Dist. LEXIS 92723, at *13–14 (S.D. Cal. July 8, 2014) ("[movant] had many opportunities to properly raise the [affirmative] defense" but "failed to do so and waited until the '11th hour' instead of the earliest possible moment to properly raise it"); *Kaufman v. Unum Life Ins. Co. of Am.*, 834 F. Supp. 2d 1186, 1193 (D. Nev. 2011) ("[defendant] has waived its [affirmative] defense due to the prejudice [plaintiff] has suffered in having to confront the defense too late in the time line of the litigation"). In short, "[a] defendant should not be permitted to 'lie behind a log' and ambush a plaintiff with an unexpected defense." *Venters v. City of Delphi*, 123 F.3d 956, 968 (7th Cir. 1997) (citation omitted) (defendants waived affirmative defense where "the first and only mention of the [affirmative defense] came in their reply memorandum in support of the motion for summary judgment, submitted a year after the case was filed").

Further, to resolve the merits of a *Heck* affirmative defense, a court must identify "the factual basis for the conviction." *Martell v. Cole*, 115 F.4th 1233, 1240 (9th Cir. 2024). In this case, "[w]ithout [the specific factual basis for Roberts' conviction], this Court cannot determine that [Roberts'] claim of excessive force in this case would call into question the validity of his … conviction." *See Reese v. County of Sacramento*, 888 F.3d 1030, 1046 (9th Cir. 2018). Thus, "additional time-intensive discovery would be required if [Defendants] [were] allowed to proceed with [their] affirmative defenses…" *See, e.g.*, *TB Holding Co. Ltd. Liab. Co.*, 2024 U.S. Dist. LEXIS 63359, at *10–11; *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1295 (9th Cir. 2000) ("A need to reopen discovery and therefore delay the proceedings supports a district court's finding of prejudice from a delayed motion to amend the [pleading]." (citation omitted)).

***b. Delay***

Defendants concede delay in the proceedings and, in fact, admit that "[they] made the reasoned decision to delay [asserting a *Heck* affirmative defense] until the ruling on the first [motion for summary judgment] was certain." Motion at 6. But, as this Court explained, "Defendants could have brought the

criminal case and Roberts's no-contest plea to the court's attention while their summary judgment motion was pending, but they did not. They may not do so now." ECF No. 61 at 2 (internal citation omitted). *See Buenviaje v. Wal-Mart Assocs.*, 2024 U.S. Dist. LEXIS 195657, at *15–16 (S.D. Cal. Oct. 25, 2024) ("The reason for the delay, including whether it was within the moving party's reasonable control, weighs overwhelmingly against a finding of excusable neglect, as [movant] has failed to show any effort to comply with the Court's [] deadline prior to the deadline. . . . While [movant] maintains he has not acted willfully or in bad faith, the Court finds lack of bad faith does not outweigh the other factors.").

Even if Defendants' "reasoned decision to delay," Motion at 6, were proper (it is not), nonetheless, Defendants waited a further <u>85 days</u> after the Court denied in part summary judgment before moving to amend. *Compare* ECF No. 41 (order filed March 5, 2025) *with* ECF No. 66 (motion filed May 29, 2025).

***c. Reason***

Defendants concede that "[they] made the reasoned decision to delay [asserting a *Heck* affirmative defense] until the ruling on the first [motion for summary judgment] was certain." Motion at 6. But if a movant's "stated basis for the delay was a strategic decision by counsel," then those "tactical decisions do not amount to affirmative showings of excusable neglect under Rule 6(b)." *See, e.g.*, *Yeoman v. Ikea U.S. W., Inc.*, 2013 U.S. Dist. LEXIS 151763, at *15 (S.D. Cal. Oct. 22, 2013) (internal citation omitted); *Sil-Flo, Inc. v. SFHC, Inc.*, 917 F.2d 1507, 1519 (10th Cir. 1990) ("defendants' failure timely amend was not due to oversight, inadvertence or excusable neglect" but, rather, "was a tactical decision and not simply a mistake by counsel"); *Slaughter v. S. Talc Co.*, 919 F.2d 304, 307 (5th Cir. 1990) (counsel "made a tactical decision" to delay but "this tactical decision [was] inequivalent to [] 'excusable neglect'"); *African Am. Voting Rights Legal Def. Fund v. Villa*, 54 F.3d 1345, 1350 (8th Cir. 1995) ("strategy[] and tactical decisions do not amount to affirmative showings of excusable neglect under Rule 6(b)"); *In re Veritas Software Corp. Sec. Litig.*, 2006 U.S. Dist. LEXIS 10116, at *13 (N.D. Cal. Feb. 24, 2006) ("the proffered reason for the delay does not demonstrate neglect, but, rather, a deliberate decision to 'postpone'"); *Level 3 Communs., Inc. v. Lidco Imperial Valley, Inc.*, 2012 U.S. Dist. LEXIS 146887, at *20 (S.D. Cal. Oct. 11, 2012) ("a deliberate decision [is] not excusable neglect").

#### *d. Good Faith*

Defendants argue that their "reasoned decision to delay" asserting a *Heck* affirmative defense was motivated by a desire to avoid "waste and an unnecessary increase in Plaintiffs' attorney fees" in the event that the motion for summary judgment was granted. Motion at 6.[2] But this Court explained that "[t]he summary judgment process is not to be used to test what the court's ruling will be and then to patch any deficiencies . . . with a subsequent motion." ECF No. 61 at 2 (quoting *Brazill v. Cal. Northstate Coll. of Pharmacy, LLC*, 2013 U.S. Dist. LEXIS 119691, at *4–5 (E.D. Cal. Aug. 22, 2013)). In any event, even if Defendants "maintain[] [they] ha[ve] not acted … in bad faith," nonetheless, a "lack of bad faith does not outweigh the other factors." *See Buenviaje*, 2024 U.S. Dist. LEXIS 195657, at *15–16.

### 2. Good Cause

> Rule 16(b)'s "good cause" standard primarily considers the diligence of the party seeking the amendment. The district court may modify the pretrial schedule if it cannot reasonably be met despite the diligence of the party seeking the extension. Moreover, carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief. Although the existence or degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for seeking modification. If that party was not diligent, the inquiry should end.

*Johnson v. Mammoth Recreations Inc.*, 975 F.2d 604, 609 (9th Cir. 1992) (internal citations omitted); *see also DRK Photo v. McGraw-Hill Glob. Educ. Holdings, LLC*, 870 F.3d 978, 989 (9th Cir. 2017) ("The central inquiry under Fed. R. Civ. P. 16(b)(4) is whether the requesting party was diligent in seeking the amendment.").

"The party seeking to modify a scheduling order bears the burden of demonstrating good cause." *See*, *e.g.*, *Hughes v. Wal-Mart Assocs.*, 2024 U.S. Dist. LEXIS 167531, at *6 (E.D. Cal. Sep. 17, 2024); *Buenviaje v. Wal-Mart Assocs.*, 2024 U.S. Dist. LEXIS 195657, at *8 (S.D. Cal. Oct. 25, 2024). "[T]o demonstrate diligence under Rule 16's 'good cause' standard, the movant may be required to show the following: (1) that she was diligent in assisting the Court in creating a workable Rule 16 order; (2) that

[2] Defendants' purported desire to avoid "waste and an unnecessary increase in Plaintiffs' attorney fees," Motion at 6, is inconsistent with the unnecessary work created by Defendants' belated attempts to assert the *Heck* affirmative defense. *See* ECF No. 48 & 66. These efforts have both *wasted* Plaintiffs' and the Court's time and *increased* Plaintiffs' attorney fees. *See* ECF No. 53 & 61.

her noncompliance with a Rule 16 deadline occurred or will occur, notwithstanding her diligent efforts to comply, because of the development of matters which could not have been reasonably foreseen or anticipated at the time of the Rule 16 scheduling conference; and (3) that she was diligent in seeking amendment of the Rule 16 order, once it became apparent that she could not comply with the order[.]" *Jackson v. Laureate, Inc.*, 186 F.R.D. 605, 608 (E.D. Cal. 1999); *see*, *e.g.*, *Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1087 (9th Cir. 2002) (party seeking extension "did not demonstrate diligence in complying with the dates set by the district court"); *Johnson*, 975 F.2d at 609–10 ("carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief" nor does the failure to "prosecute [a] case properly").

***a. Workable Schedule***

"The first inquiry focuses on whether [Defendants] discharged [their] duty to assist the Court in fashioning a Rule 16 order that would accommodate circumstances [they] now present[]. If [Defendants] w[ere] aware of those circumstances when [they] submitted [their] status report and yet said nothing about them, then such an omission would not be compatible with a finding of diligence. Parties anticipating possible amendments to their pleadings have an unflagging obligation to alert the Rule 16 scheduling judge of the nature and timing of such anticipated amendments in their status reports so that the judge can consider whether such amendments may properly be sought solely under the Rule 15(a) standard, and whether structuring discovery pertinent to the parties' decision whether to amend is feasible. Therefore, a party who fails to assist the Rule 16 scheduling judge in fashioning workable programmatic procedures must bear the reasonably foreseeable consequences for [their] failure to do so." *Jackson*, 186 F.R.D. at 608 (internal citations & fn. omitted).

Defendants argue that "[they] were diligent in assisting the Court in creating a workable Rule 16 order" because "[t]here [wa]s no indication that the schedule set at that time was unreasonable or insufficient to allow the underlying criminal matter to play out prior to the dispositive motion deadline." Motion at 4–5. But Defendants acknowledged the criminal proceedings which they now claim gives rise to a *Heck* affirmative defense in the parties' joint scheduling report filed with the Court on July 14, 2021. ECF No. 17 at 7 (identifying the criminal case, "*People v. Willie Roberts*, Kern County Superior Court, Case No. BF183545A," as a "Related Case"). Yet, Defendants never raised a *Heck* affirmative defense in

their pleadings. *See* ECF No. 13 at 19–23; ECF No. 14 at 19–24 (affirmative defenses). Additionally, Defendants never alerted the Court that they intended to move to amend their pleading to add a *Heck* affirmative defense, despite acknowledging the pending criminal proceedings. *See* ECF No. 17 at 3. Further, Defendants never moved for a stay of this action based on the pending criminal proceedings. Indeed, Defendants had Supreme Court guidance as to the appropriate procedure in these circumstances:

> If a plaintiff files a [civil rights] claim before he has been convicted (or files any other claim related to rulings that will likely be made in a pending or anticipated criminal trial), it is within the power of the district court, and in accord with common practice, to stay the civil action until the criminal case or the likelihood of a criminal case is ended. If the plaintiff is ultimately convicted, and if the stayed civil suit would impugn that conviction, *Heck* will require dismissal; otherwise, the civil action will proceed, absent some other bar to suit.

*Wallace v. Kato*, 549 U.S. 384, 393–94 (2007) (internal citations omitted); *see*, *e.g.*, *Peyton v. Burdick*, 358 Fed. App'x 961, 962 (9th Cir. 2009); *Gates v. Sergent*, 2024 U.S. Dist. LEXIS 77030, at *5–6 (E.D. Cal. Apr. 26, 2024) (collecting cases for the proposition that courts frequently stay proceedings based on the pendency of potentially-dispositive criminal proceedings implicating a *Heck* affirmative defense). Finally, once the Court issued its scheduling order setting out the "Pleading Amendment Deadline" and "Pre-Trial Motion Schedule," *see* ECF No. 18 at 2–4, "[Defendants] w[ere] provided a specific opportunity to object to any provision of the Rule 16 Order after its filing but failed to use that opportunity to alert the Court to an anticipated amendment." *See Jackson*, 186 F.R.D. at 608 n.5.

***b. Unforeseen Circumstances***

Defendants must "demonstrate that [their] inability to comply with the Rule 16 Scheduling Order results from [their] having become aware of information that [they] could not have reasonably foreseen at the time the Rule 16 Scheduling Order became final." *Jackson*, 186 F.R.D. at 609.

Defendants argue that Roberts' no-contest plea constituted a "development of matters which could not have been reasonably foreseen or anticipated *at the time of the Rule 16 scheduling conference*." Motion at 5–6. But that is not the issue. Rather, the issue is whether Defendants were "aware of information" related to—or could have "reasonably foreseen" the need to assert—a *Heck* affirmative defense "at the time the Rule 16 Scheduling Order became final." *See Jackson*, 186 F.R.D. at 609. As this Court explained, "the criminal case against Roberts was filed … in 2020, before this case had even

begun." ECF No. 61 at 2. At the very latest, Defendants knew of Roberts' criminal case by July 14, 2021, when they cited it in their scheduling report. ECF No. 17 at 7 (identifying the criminal case, "*People v. Willie Roberts*, Kern County Superior Court, Case No. BF183545A," as a "Related Case"). Thus, Defendants could—and should—have moved the Court "to stay the civil action until the criminal case or the likelihood of a criminal case is ended." *See Wallace*, 549 U.S. at 393–94; *see also Gates*, 2024 U.S. Dist. LEXIS 77030, at *5–6 (collecting cases). Additionally, this Court also recognized, "Roberts changed his plea several months before this court issued its order on defendants' motion for summary judgment" such that "Defendants could have brought the criminal case and Roberts's no-contest plea to the court's attention while their summary judgment motion was pending, but they did not." ECF No. 61 at 2.

Thus, Defendants failed to take any of several reasonable steps to preserve a *Heck* affirmative defense, despite multiple opportunities and foreseeable circumstances. *See*, *e.g.*, *Garza v. City of Visalia*, 2022 U.S. Dist. LEXIS 230912, at *4–5 (E.D. Cal. Dec. 22, 2022) ("[T]he Court notes the underlying facts and posture of both the criminal and instant matter have been known to the parties for approximately two years. Yet it is unclear to the Court why a motion to stay or motion for a protective order was not raised in a timely fashion; [movant] proffers no explanation."); *Tapia v. Naphcare Inc.*, 2025 U.S. Dist. LEXIS 47189, at *6 (W.D. Wash. Mar. 14, 2025) ("[defendant]'s claim that it could not have considered" the potential affirmative defense earlier "is not credible or consistent with the record").

***c. Diligence***

Defendants must "show diligence in filing [a] motion to amend and having it heard." *Jackson*, 186 F.R.D. at 609 (fn. omitted).

As this Court explained, "Roberts changed his plea several months before this court issued its order on defendants' motion for summary judgment, and the criminal case against Roberts was filed much earlier, in 2020, before this case had even begun" such that "Defendants could have brought the criminal case and Roberts's no-contest plea to the court's attention while their summary judgment motion was pending, but they did not." ECF No. 61 at 2. Thus, Defendants were not diligent. *See*, *e.g.*, *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1294–95 (9th Cir. 2000) (no diligence where the motion to amend was filed after a motion for summary judgment was filed); *AmerisourceBergen Corp. v. Dialysist*

*W., Inc.*, 465 F.3d 946, 953 (9th Cir. 2006) ("eight month delay" before "seeking a leave to amend is unreasonable"); *Manriquez v. City of Phoenix*, 654 Fed. App'x 350, 351 (9th Cir. 2016) (movants "failed to exercise reasonable diligence" where they "waited … approximately three months … to file a motion to amend"); *Eckert Cold Storage v. Behl*, 943 F. Supp. 1230, 1233 (E.D. Cal. 1996) (no diligence where movants "waited up to seven months … before filing the motion to amend"); *Estate of Thomas v. County of Sacramento*, 2022 U.S. Dist. LEXIS 10175, at *2 (E.D. Cal. Jan. 18, 2022) ("[movants] could have sought leave to amend their [pleading] … many months ago, but they did not"); *Harman Int'l Indus. Inc. v. Jem Access., Inc.*, 2023 U.S. Dist. LEXIS 90410, at *7 (C.D. Cal. Apr. 27, 2023) ("Where, as here, the party seeking leave to amend its pleading waited six months after the close of discovery and after dispositive motions were fully briefed, the Court cannot find the party acted diligently.").

Indeed, Defendants concede that "[they] made the reasoned decision to delay [asserting a *Heck* affirmative defense] until the ruling on the first [motion for summary judgment] was certain." Motion at 6. But "a movant's conceded decision to delay seeking a proposed amendment for several months cannot show good cause." *See*, *e.g.*, *Cervantes v. Zimmerman*, 2019 U.S. Dist. LEXIS 39789, at *17 (S.D. Cal. Mar. 12, 2019); *Ruvalcaba v. Ocwen Loan Servicing, LLC*, 2018 U.S. Dist. LEXIS 1745, at *11 (S.D. Cal. Jan. 4, 2018) (defendant's "represent[ation] that 'we delayed filing the motion to amend' . . . . cannot support a finding of diligence"); *Lampley v. Smith's Food & Drug Ctrs., Inc.*, 2016 U.S. Dist. LEXIS 128060, at *8–9 (D. Nev. July 19, 2016) ("[defendant] represents that it made a strategic decision to delay" but "[t]he failure to comply with a scheduling order deadline based on a strategic litigation decision to delay is antithetical to the required showing of diligence necessary to extend that deadline"); *Lewis v. Russell*, 2012 U.S. Dist. LEXIS 143453, at *18 (E.D. Cal. Oct. 2, 2012) ("decision to wait until after … the Ninth Circuit decided cases … does not demonstrate diligence"); *B2B CFO Partners, LLC v. Kaufman*, 2011 U.S. Dist. LEXIS 76204, at *12 (D. Ariz. July 13, 2011) ("there is no good cause to amend … at this late stage in the litigation," where movant "had a tactical reason" for failing to amend earlier "even when they had [necessary] information"); *Carbajal v. Dorn*, 2010 U.S. Dist. LEXIS 46446, at *11 (D. Ariz. Apr. 13, 2010) (movants "had ample reason to know they should [amend]" but "[t]hey chose not to do so for tactical reasons"); *Long v. Ford Motor Co.*, 2009 U.S. Dist. LEXIS 32306, at *10 (D. Ariz. Apr. 1, 2009) (where movant conceded decision to "await the results of [an] investigation"

rather "than to rush to amend," "[b]ased on this statement, … the delay was the result of a tactical decision" and "[a] tactical decision to delay does not merit good cause" and was "not diligent"); *see also Acri v. Int'l Asso. of Machinists & Aerospace Workers*, 781 F.2d 1393, 1398 (9th Cir. 1986) ("[movants'] attorney admitted that [movants'] delay … was a tactical choice").

"In sum, [Defendants] fail[] to show that [they] w[ere] diligent in seeking to raise an affirmative defense that [they] reasonably should have considered in the earlier stages of this litigation." *See Tapia*, 2025 U.S. Dist. LEXIS 47189, at *8.

**3. *Foman* Factors**

Even if Defendants could show "good cause" for amendment under Rule 16 (they cannot), nonetheless, they must *also* show that the amendment is proper under Rule 15. *See Johnson v. Mammoth Recreations*, 975 F.2d 604, 608 (9th Cir. 1992). "Five factors are frequently used to assess the propriety of a motion for leave to amend: (1) bad faith, (2) undue delay, (3) prejudice to the opposing party, (4) futility of amendment; and (5) whether [movant] has previously amended [the pleading]." *Allen v. City of Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990); *see Foman v. Davis*, 371 U.S. 178, 182 (1962).

***a. Bad Faith***

"In the context of a motion for leave to amend, 'bad faith' means acting with intent to deceive, harass, mislead, delay, or disrupt." *Wizards of the Coast LLC v. Cryptozoic Entm't LLC*, 309 F.R.D. 645, 651 (W.D. Wash. 2015).

Defendants' decision belatedly to asset a *Heck* affirmative defense comes weeks before trial is scheduled to begin on August 4, 2025. ECF No. 57 at 10. Indeed, Defendants concede that "[they] made the reasoned decision to delay [asserting a *Heck* affirmative defense] until the ruling on the first [motion for summary judgment] was certain." Motion at 6. This suggests a motive to delay the proceedings.

***b. Undue Delay***

"[I]n evaluating undue delay, [a court] inquire[s] whether the moving party knew or should have known the facts and theories raised by the amendment in the original pleading." *AmerisourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 953 (9th Cir. 2006) (internal citation omitted). The delay is considered in the context of (1) the length of the delay measured from the time the moving party obtained relevant facts; (2) whether discovery has closed; and (3) proximity to the trial date. *Texaco, Inc. v.*

*Ponsoldt*, 939 F.2d 794, 798–99 (9th Cir. 1991). For example, "[a] need to reopen discovery and therefore delay the proceedings" supports a finding of undue delay. *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1295 (9th Cir. 2000) (citation omitted).

As this Court explained, "Roberts changed his plea several months before this court issued its order on defendants' motion for summary judgment, and the criminal case against Roberts was filed much earlier, in 2020, before this case had even begun" such that "Defendants could have brought the criminal case and Roberts's no-contest plea to the court's attention while their summary judgment motion was pending, but they did not." ECF No. 61 at 2. Indeed, Defendants concede that "[they] made the reasoned decision to delay [asserting a *Heck* affirmative defense] until the ruling on the first [motion for summary judgment] was certain." Motion at 6. But the Ninth Circuit has held that "admit[ting] that [movant's] delay … was a tactical choice" supports a finding that amendment is not justified. *Acri v. Int'l Asso. of Machinists & Aerospace Workers*, 781 F.2d 1393, 1398–99 (9th Cir. 1986).

***c. Prejudice***

"[I]t is the consideration of prejudice to the opposing party that carries the greatest weight." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). "A defendant should not be permitted to 'lie behind a log' and ambush a plaintiff with an unexpected defense." *Venters v. City of Delphi*, 123 F.3d 956, 968 (7th Cir. 1997) (citation omitted) (defendants waived affirmative defense where "the first and only mention of the [affirmative defense] came in their reply memorandum in support of the motion for summary judgment, submitted a year after the case was filed").

For same reasons discussed above in reference to the excusable-neglect standard, Defendants' delay is prejudicial because "Plaintiff[s] ha[ve] already expended significant time and resources structuring [their] trial preparation" and, "had [Defendants] asserted the [*Heck*] defense earlier, [Plaintiffs'] litigation strategy … may have been impacted. These prejudicial consequences [] support denying [Defendants'] motion to amend." *Tapia v. Naphcare Inc.*, 2025 U.S. Dist. LEXIS 47189, at *8–9 (W.D. Wash. Mar. 14, 2025) (internal citation omitted); *see*, *e.g.*, *TB Holding Co. Ltd. Liab. Co. v. J&S Siding*, 2024 U.S. Dist. LEXIS 63359, at *10 (D. Idaho Apr. 5, 2024) ("The failure to raise a defense is prejudicial if the party against whom the issue is raised may have tried its case differently or advanced distinct legal arguments against the issue." (citation omitted)); *Taylor v. First Advantage Background*

*Servs. Corp.*, 207 F. Supp. 3d 1095, 1106 (N.D. Cal. 2016) ("Plaintiff would be prejudiced if Defendant were allowed to raise the affirmative defense for the first time at summary judgment and after the close of discovery."); *Rigsbee v. City & County of Honolulu*, 2019 U.S. Dist. LEXIS 32475, at *7 (D. Haw. Feb. 28, 2019) (finding "[d]efendant's [m]otion [wa]s untimely, would unduly delay trial, and severely prejudice the [p]laintiff," where "[d]efendant s[ought] to raise an affirmative defense" "for the first time" only "five weeks before trial"); *Borges v. County of Humboldt*, 2017 U.S. Dist. LEXIS 169170, at *5 (N.D. Cal. Oct. 12, 2017) (that "plaintiff may have … pursued a different litigation strategy" was a "prejudicial consequence[] due to defendants' failure to plead the defense" earlier); *Karoun Dairies, Inc. v. Karlacti, Inc.*, 2014 U.S. Dist. LEXIS 92723, at *13–14 (S.D. Cal. July 8, 2014) ("[movant] had many opportunities to properly raise the [affirmative] defense" but "failed to do so and waited until the '11th hour' instead of the earliest possible moment to properly raise it"); *Kaufman v. Unum Life Ins. Co. of Am.*, 834 F. Supp. 2d 1186, 1193 (D. Nev. 2011) ("[defendant] has waived its [affirmative defense] defense due to the prejudice [plaintiff] has suffered in having to confront the defense too late in the time line of the litigation").

***d. Futility***

"Futility alone can justify the denial of a motion for leave to amend." *Nunes v. Ashcroft*, 375 F.3d 805, 808 (9th Cir. 2003).

i. <u>Waiver</u>

"Under the Federal Rules of Civil Procedure, a party, with limited exceptions, is required to raise every defense in its first responsive pleading, and defenses not so raised are deemed waived." *Morrison v. Mahoney*, 399 F.3d 1042, 1046 (9th Cir. 2005). "*Heck* is an affirmative defense that may be waived or forfeited." *Hebrard v. Nofziger*, 90 F.4th 1000, 1006 (9th Cir. 2024); *Washington v. Los Angeles County Sheriff's Dep't*, 833 F.3d 1048, 1056 (9th Cir. 2016) ("compliance with *Heck* … constitutes an affirmative defense and not a pleading requirement").

In this case, Defendants have filed two different answers but neither pleaded a *Heck* affirmative defense. *See* ECF No. 13 at 19–23; ECF No. 14 at 19–24 (affirmative defenses). Thus, the *Heck* affirmative defense is "deemed waived." *See Morrison*, 399 F.3d at 1046. Defendants argue—without explanation or support—that, "[l]ike in *Hebrand*, [they] have not waived their affirmative defense based

on *Heck*." Motion at 8. "A finding of waiver requires evidence of a party's actions that evince his intentional relinquishment of a known right." *Hebrard*, 90 F.4th at 1006. In this case, Defendants intentionally relinquished a *Heck* affirmative defense by admitting that "[they] made the reasoned decision to delay [asserting a *Heck* affirmative defense] until the ruling on the first [motion for summary judgment] was certain." Motion at 6.

ii. Forfeiture

Even if a *Heck* affirmative defense is not waived, nonetheless, "[a defendant]'s failure to plead *Heck* as an affirmative defense [] constitute[s] [] a forfeiture." *Hebrard*, 90 F.4th at 1006; *see also Hamer v. Neighborhood Hous. Servs.*, 583 U.S. 17, 20 n.1 (2017) ("[F]orfeiture is the failure to make the timely assertion of a right[.]").

Defendants have filed two different answers but neither pleaded a *Heck* affirmative defense. *See* ECF No. 13 at 19–23; ECF No. 14 at 19–24 (affirmative defenses). Thus, Defendants' "failure to plead *Heck* as an affirmative defense [] constitute[s] [] a forfeiture." *See Hebrard*, 90 F.4th at 1006; *see also*, *e.g.*, *John R. Sand & Gravel Co. v. United States*, 552 U.S. 130, 133 (2008) ("an affirmative defense that the defendant must raise at the pleadings stage … is subject to rules of forfeiture and waiver"); *Trs. of the Nev. Resort Ass'n-International All. of Theatrical Stage Emples. v. Grasswood Partners, Inc.*, 2013 U.S. Dist. LEXIS 43333, at *19 (D. Nev. Mar. 27, 2013) ("Since failure to raise an affirmative defense in pleadings deprives the opposing party of precisely the notice that would enable it to dispute the crucial issues of the case on equal terms, a defendant forfeits an affirmative defense that is not pleaded in its answer or amended answer." (citation omitted)); *Toutov v. Curative Labs Inc.*, 2023 U.S. Dist. LEXIS 158876, at *5–6 (C.D. Cal. Aug. 28, 2023) ("Defendants did not plead [the] affirmative defense in their [a]nswer or at any time during the past 2.5 years of litigation. . . . but instead delayed in raising the defense until filing this [m]otion, less than two months before trial. . . . Defendants here did not provide [plaintiff] with sufficient notice of the potential defense."). Indeed, Defendants concede that their "failure to plead *Heck* as an affirmative defense clearly constitute[s] [] a forfeiture." Motion at 8 (quoting *Hebrard*, 90 F.4th at 1006).

iii. Proof

Even if a *Heck* affirmative defense is not waived or forfeited, nonetheless, "Defendants b[ear] the

burden to demonstrate the applicability of *Heck* … to each claim for which they s[eek] dismissal on that ground." *Lund v. State of California*, No. 20-17133, 2021 U.S. App. LEXIS 32096, at *2 (9th Cir. Oct. 26, 2021); *Washington*, 833 F.3d at 1056 n.5 ("Consistent with the burden of proof for an affirmative defense, we have held that the defendant in a § 1983 action must show that the plaintiff's success in the action would necessarily imply the invalidity of a criminal conviction.").

Defendants argue—without explanation or support—that "*Heck v. Humphrey* and Roberts's own admissions in criminal court represents a complete defense to [] Roberts's claims against Defendants." Motion at 7.[3] But "*Heck* does not bar a § 1983 action following a [criminal] conviction unless the factual basis for the conviction was resistance to or obstruction of the particular use of force the plaintiff alleges was excessive. When the factual predicate of the conviction is not clear from the record and the conviction could have been based on an act of resistance or obstruction different from the plaintiff's conduct during the allegedly unlawful use of force, a judgment in the plaintiff's favor in the § 1983 action would not necessarily imply the invalidity of the conviction." *Martell v. Cole*, 115 F.4th 1233, 1240 (9th Cir. 2024) (internal citation omitted); *see*, *e.g.*, *id.* at 1240–41 (*Heck* affirmative defense failed "[b]ecause [plaintiff]'s conviction is adequately supported by his resisting or obstructing conduct that took place both before and after the deputies' allegedly unlawful use of force"); *Lemos v. County of Sonoma*, 40 F.4th 1002, 1007 (9th Cir. 2022) ("Because the jury returned a general verdict, we do not know which act it thought constituted an offense. . . . There would be no contradiction in concluding (as the criminal jury may have) that [plaintiff] obstructed [deputy] during the lawful performance of his duties by, say, blocking him from opening the truck door while also concluding (as [plaintiff] alleges in this action) that [deputy] used excessive force when he tackled her five minutes later."); *Reese v. County of Sacramento*, 888 F.3d 1030, 1046 (9th Cir. 2018) ("Defendants have identified nothing in the record that shows the specific factual basis for [plaintiff]'s misdemeanor conviction. Without such information, this Court cannot determine that [plaintiff]'s claim of excessive force in this case would call into question

[3] A *Heck* affirmative defense is not a "complete defense" to any of Roberts' state law claims because, "by its terms, *Heck v. Humphrey* applies to a Section 1983 action"—not "state law causes of action." *Medeiros v. Clark*, 713 F. Supp. 2d 1043, 1056 n.1 (E.D. Cal. 2010) (citing *Nuno v. County of San Bernardino*, 58 F. Supp. 2d 1127, 1130 n.3 (C.D. Cal. 1999)).

the validity of his misdemeanor weapon conviction."); *Gomez v. Fachko*, 2021 U.S. Dist. LEXIS 83476, at *16 (N.D. Cal. Apr. 30, 2021) ("The basis for [plaintiff]'s plea of no contest was [] unclear.").

In this case, Roberts pled *nolo contendre* to a violation of California Penal Code § 69 which provides, in relevant part: "Every person who attempts, by means of any threat or violence, to deter or prevent an executive officer from performing any duty imposed upon the officer by law, or who knowingly resists, by the use of force or violence, the officer, in the performance of his or her duty, is punishable…" Cal. Pen. Code § 69(a). But the factual predicate for Roberts' no-contest plea is <u>not</u> clear from the record:

> THE COURT: Counsel, is there a factual basis for the plea I'm about to take?
> MR. PIERCE: Yes, Your Honor.
> MR. FIELDS: So stipulated.
> THE COURT: Very good.

ECF No. 52 at 23.

Because the record is unclear, the factual predicate for Roberts' no-contest plea could have been based on any number of acts different from his conduct during Geherty's allegedly unlawful use of force. For example, deputy Victor Garcia reported that, "[t]he security guard manning the entrance [of the casino], later identified as Willie Divine Roberts, initially turned the deputies away telling them the casino was full and they would have to come back thirty minutes later." ECF No. 27-3 at 88. Additionally, Roberts testified that, when Geherty ordered him to "turn around and put my hands up and walk backwards, [he] dropped [his] phone" and told Geherty, "I do have a fake gun on the side of me." *Id*. at 15. Further, Roberts testified that he and Geherty were "talking," prior to the shooting, *id*. at 16, and that he "just started screaming" after the shooting, *id*. at 17. Sutton also testified that, after the shooting, deputies told Roberts he was "just being a whiner and it shouldn't hurt that much" and that "[he] was being overreactive and that he wasn't hurt." *Id*. at 70, 75. Finally, after the shooting, sergeant Jason Colbert ordered deputy Andrew Bassett to apply handcuffs to Roberts' arms. *Id*. at 159. Theoretically, Roberts' conduct during any of these acts could have given rise to his no-contest plea.

Thus, Defendants have not carried the burden to demonstrate that the factual predicate of Roberts' no-contest plea is clear from the record and it could *only* have been based on an act of resistance or obstruction which was the same as his conduct during the allegedly unlawful use of force.

***e. Prior Amendment***

Defendants previously amended their pleading but did not add a *Heck* affirmative defense at that time. *Compare* ECF No. 13 at 19–23 (original answer) *with* ECF No. 14 at 19–24 (amended answer). "The district court's discretion to deny leave to amend is particularly broad where [movant] has previously amended the [pleading]." *Allen*, 911 F.2d at 373.

**B. MOTION FOR LEAVE TO FILE A SECOND MOTION FOR SUMMARY JUDGMENT**

**1. Reconsideration**

Defendants previously filed a motion "request[ing] leave to file a second motion for summary judgment" in order to raise a *Heck* affirmative defense. ECF No. 49 at 22–23. In response, this Court "denie[d]" Defendants' motion "to file a second motion for summary" because "[t]he deadline for dispositive motions has passed" and "Defendants have not shown good cause to extend that deadline." ECF No. 61 at 2. Now, Defendants move the Court for the same relief it previously requested and was denied: an "order amending the scheduling order to allow Defendants [] to move for summary judgment on the sole ground that [] Roberts's claims are barred by *Heck v. Humphrey*." Motion at 1–2.

Because Defendants' current motion seeks the same relief as their prior motion, *compare* ECF No. 49 at 22–23 *with* Motion at 1–2, the current "motion is properly construed as a motion for reconsideration." *See*, *e.g.*, *Lewis v. Dirt Sports LLC*, 2015 U.S. Dist. LEXIS 192852, at *2 (D. Ariz. June 30, 2015); *McElroy v. Cox*, 2009 U.S. Dist. LEXIS 122179, at *2 (E.D. Cal. Dec. 8, 2009) ("The Court construes [movant's] second motion … as a motion for reconsideration since he seeks the same relief as the original motion…"); *Lai v. Quality Loan Serv. Corp.*, 2010 U.S. Dist. LEXIS 61120, at *5 (C.D. Cal. June 2, 2010) ("Both the earlier request and the current application seek the same relief. Thus, the Court construes this application as a request for reconsideration."); *United States v. McClellon*, 2025 U.S. Dist. LEXIS 54157, at *3 (W.D. Wash. Mar. 24, 2025) ("[Defendant] already moved [for the same relief sought in the current motion], and the Court denied that motion. His current motion seeking the same relief is thus a motion for reconsideration." (internal citation omitted)). During pre-motion meet-and-confer discussions, Plaintiffs' counsel raised this issue but Defendants' counsel ignored it. *See* ECF No. 66-1 at 104–06. Simply "[r]epeating that [a] motion is not for reconsideration does not make it so." *Pac. Coast Steel v. Stoddard*, 2013 U.S. Dist. LEXIS 199213, at *27 (S.D. Cal. Feb. 15, 2013).

Accordingly, Defendants are obligated to satisfy the standard for reconsideration. *See 389 Orange St. Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir. 1999) (setting out standard for reconsideration); *see also* E.D. Cal. L.R. 230(j). But Defendants do not even attempt to satisfy the standard. *See generally* Motion; *see also*, *e.g.*, *Anoruo v. Valley Health Sys., LLC*, 2018 U.S. Dist. LEXIS 151645, at *2 (D. Nev. Sep. 6, 2018) ("[movant]'s motions do not cite, let alone attempt to comply with, the applicable standards" for reconsideration); *Hukman v. Sinclair*, 2024 U.S. Dist. LEXIS 200713, at *4 (D. Nev. Nov. 5, 2024) ("The motion fails to address the standard for reconsideration entirely."); *Vill. Cmtys., LLC v. County of San Diego*, 2023 U.S. Dist. LEXIS 5509, at *7 (S.D. Cal. Jan. 11, 2023) ("Defendants fail to address the legal standard for motions for reconsideration, and do not provide a basis for reconsideration, such as an intervening change in controlling law, the availability of newly discovered or previously unavailable evidence, or the need to correct a clear error or prevent a manifest injustice.").

This Court previously performed the reconsideration analysis and found that "defendants [have not] identified any relevant changes in the law, new evidence, clear error or manifest injustice that might warrant a successive motion." ECF No. 61 at 2.

**2. Excusable Neglect**

Defendants again fail to address the excusable-neglect standard and, instead, only discuss the good-cause standard. *See* Motion at 4. As discussed above and incorporated herein, Defendants cannot satisfy the excusable-neglect standard, including where: (1) prejudice to Plaintiffs is great; (2) Defendants' delay will unreasonably impact judicial proceedings; (3) Defendants made a "reasoned decision to delay," Motion at 6; and (4) Defendants' conduct was not in good faith.

**3. Good Cause**

This Court previously conducted the good-cause analysis and found that "[t]he deadline for dispositive motions has passed" and "Defendants have not shown good cause to extend that deadline." ECF No. 61 at 2. Additionally, as discussed above and incorporated herein, Defendants cannot satisfy the good-cause standard because: (1) Defendants were not diligent in assisting the Court in creating a workable Rule 16 order, where "the criminal case against Roberts was filed … in 2020, before this case had even begun," *id.*; (2) Defendants could have been reasonably foreseen or anticipated the need to assert a *Heck* affirmative defense at the time of the Rule 16 scheduling conference; and (3) Defendants

were not diligent in seeking amendment of the Rule 16 order, where "Roberts changed his plea several months before this court issued its order on defendants' motion for summary judgment, and . . . . Defendants could have brought the criminal case and Roberts's no-contest plea to the court's attention while their summary judgment motion was pending, but they did not," *id.*—rather, Defendants made a "reasoned decision to delay," Motion at 6.

### C. ANTICIPATED MOTION FOR JUDGMENT AS A MATTER OF LAW

Defendants argue—without support—that "considerable waste" resulting from a jury trial will be avoided if the Court resolves the *Heck* affirmative defense pre-trial because "Defendants may have an opportunity to raise their *Heck*-bar arguments in a [Federal Rule of Civil Procedure] 50 motion, applying the same standard as summary judgment, but only *after* the case has been fully heard by the jury." Motion at 8–9. But, as explained above, Defendants have "waived or forfeited" a *Heck* affirmative defense, *Hebrard v. Nofziger*, 90 F.4th 1000, 1006 (9th Cir. 2024), including by failing to plead it in an answer, ECF No. 13 at 19–23; ECF No. 14 at 19–24, or to timely move to amend when they had the opportunity to do so. *See* ECF No. 61 at 2 ("Roberts changed his plea several months before this court issued its order on defendants' motion for summary judgment, and the criminal case against Roberts was filed much earlier, in 2020, before this case had even begun. Defendants could have brought the criminal case and Roberts's no-contest plea to the court's attention while their summary judgment motion was pending, but they did not. They may not do so now. . . . The deadline for dispositive motions has passed. Defendants have not shown good cause to extend that deadline." (internal citations omitted)).

Accordingly, "Defendants may not assert the defense for the first time in a post-trial motion under Federal Rule of Civil Procedure 50(a)." *Binkovich v. Barthelemy*, 672 F. App'x 648, 650 (9th Cir. 2016). Specifically, "articulating a defense for the first time in a Rule 50(a) motion for judgment as a matter of law is a 'trial-by-ambush tactic.'" *Cranpark, Inc. v. Rogers Grp., Inc.*, 821 F.3d 723, 735 (6th Cir. 2016) (quoting *Int'l Meat Traders, Inc. v. H & M Food Sys.*, 70 F.3d 836, 840 (5th Cir. 1995)). Thus, if Defendants attempt to raise a *Heck* affirmative defense during trial, then their "efforts in this regard were too little, too late." *Id.*

## IV. <u>CONCLUSION</u>

For these reasons, Defendants' motion, ECF No. 66, should be denied.

Dated: June 12, 2025

Respectfully Submitted,

By: ________________________________

Mark E. Merin
Paul H. Masuhara
LAW OFFICE OF MARK E. MERIN
1010 F Street, Suite 300
Sacramento, California 95814
Telephone: (916) 443-6911
Facsimile: (916) 447-8336

Attorneys for Plaintiffs
WILLIE ROBERTS and CARLA SUTTON